551 A.2d 947

**ALLAN M. DWORKIN, D.D.S., P.A.**

v.

**Stuart D. BLUMENTHAL, et al.**

**No. 696, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 12, 1989.

**776**

Randolph C. Knepper (Levin, Gann & Hankin, P.A., on the brief), Baltimore, for appellant.

Paul D. Bekman (Suzanne K. Farace and Israelson, Salsbury, Clements and Bekman, on the brief), Baltimore, for appellees.

Argued before GILBERT, C.J., and GARRITY and WENNER, JJ.

WENNER, Judge.

Appellant, Allan W. Dworkin, D.D.S., P.A., appeals from a judgment entered by the Circuit Court for Baltimore County, sitting without a jury. Appellees are Drs. Stuart D. and Bruce S. Blumenthal. Specifically, appellant complains that:

I. The trial court erred in finding that appellees did not breach their fiduciary duty to appellant.

II. The trial court erred in admitting testimony of a witness for appellees.

Finding no merit to these contentions, we shall affirm.[1]

Appellant is a professional association of dentists trading as Cross Keys Dental Associates. Dr. Stuart Blumenthal, a dentist whose specialty is pedodontics, was employed by appellant for about three years. Dr. Stuart's brother, Dr. Bruce Blumenthal, was a part-time employee of appellant for about two years. According to a written agreement with appellant, Dr. Bruce was an independent contractor. Dr. Bruce's agreement with appellant contained no covenants restricting competition. Dr. Stuart, on the other hand, never had a written agreement with appellant. Although a long-term agreement was contemplated by Dr. Stuart and appellant, no agreement was ever reached. According to the record, Dr. Stuart rejected all proposals for an agreement containing covenants restricting competition because none of the proposals provided Dr. Stuart the right to purchase a portion of appellant's practice.

The appellees resigned from appellant's practice effective August 26, 1985.[2] In the months prior to their resignation, utilizing ledger cards and patient charts kept by appellant, appellees compiled a list of patients they had treated.[3] On

---

**1.** Although we have restated appellant's first three contentions, appellant stated them as follows:

I. Was Appellees' appropriation and use of Appellant's confidential information during the term of their employment for the purpose of competing with Appellant wrongful?

II. Was the appropriation of Appellant's confidential information during the course of employment to compete with Appellant after termination wrongful?

III. Did Appellees have a right to use Appellant's confidential information in competition with Appellant?

We find it unnecessary to reach appellant's contention that the trial court erred in finding the evidence insufficient to sustain an award of damages, inasmuch as we agree with the trial court that there was no breach of duty.

**2.** Upon his resignation, it was agreed that Dr. Stuart would finish out the work week as an "independent contractor," thereby permitting him to treat patients already scheduled.

**3.** There was an estimated 5000 to 7000 total patient population at Cross Keys. The patient list derived from appellant's files was com-

August 28, 1985, appellees mailed announcements of the relocation of their practice to those patients. Enclosed with the announcements were record transfer forms to assist the patients who chose to join appellees' new practice.

Chagrined by that turn of events, appellant filed a complaint in the Circuit Court for Baltimore County seeking injunctive relief, an accounting, and damages. The complaint alleged wrongful use of patient information and unfair competition. Following a hearing before Judge J. William Hinkel, judgment was entered in favor of the appellees.[4] This appeal followed.

In order to set the stage for that which follows, we point out that our standard of review was articulated by the Court of Appeals in *Space Aero Products Co. v. R.E. Darling Co.*, 238 Md. 93, 106, 208 A.2d 74, *reargument denied*, 238 Md. 93, 208 A.2d 699, *cert. denied*, 382 U.S. 843, 86 S.Ct. 77, 15 L.Ed.2d 83 (1965), as follows:

> [T]he judgment of the lower court will not be set aside on the evidence unless clearly erroneous. If there is substantial evidence to support the lower court's factual conclusion, that finding must be reviewed in the light most favorable to the prevailing party below. The conclusions of law based upon facts, however, are reviewable by this court. (citations omitted).

Md. Rule 8–131(c).

## I.

The principle question with which we are presented is whether the trial court erred in concluding that appellees had not breached their fiduciary duty of loyalty to appellant. Appellant contends that appellees appropriated confidential information during the term of their employment,

---

prised of those patients for whom appellees served as primary dentist. That list, together with the names of social acquaintances, generated approximately 1300 mailings.

4. Appellees' filed a counter claim, the outcome of which is not at issue in this appeal.

and used that information to compete with appellant during the course of their employment, as well as after their association with appellant had ended.

■ Of course, it is well established that in every employment relationship there is "an implied duty that an employee act solely for the benefit of his employer in all matters within the scope of employment, avoiding all conflicts between his duty to the employer and his own self-interest." *Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 38, 382 A.2d 564 (1978). However that may be, in *Becker v. Bailey*, 268 Md. 93, 299 A.2d 835 (1973), the Court noted that "absent an enforceable covenant restricting competition, an employee may make arrangements to compete with his former employer before termination of his services, but he may not solicit customers or directly compete while still employed." 268 Md. at 98–99 n. 2, 299 A.2d 835. The right to prepare to compete is limited only where the employee "has committed some fraudulent, unfair or wrongful act" in the course of his preparation. *Maryland Metals, supra* [282 Md.] at 40, 382 A.2d 564. Moreover, an employee is not required "in all cases [to] tell his employer of his future plans to become a competitor." *C–E–I–R, Inc. v. Computer Dynamics Corporation*, 229 Md. 357, 367, 183 A.2d 374 (1962). Once the employment relationship is terminated, the employee may solicit his former employer's business absent an enforceable covenant restricting competition, misuse of trade secrets, or misuse of confidential information. *Maryland Metals, supra* [282 Md.] at 38, 382 A.2d 564.

## A.

■ The trial court found that appellees did not actively compete with appellant during their employment. Rather the trial court found that, during their employment with appellant, appellees were merely making arrangements to compete with appellant after their employment had terminated. Although appellees readily admitted that they began compiling a patient list from appellant's records well before their employment ended, it is undisputed that the

relocation announcements were not mailed until after appellees had submitted their resignations to appellant.[5]

The court also accepted testimony that it is an accepted practice "for [those] dentists, who are employed by others, upon leaving, not only to notify patients whom they had treated but also to use the records of the employer in compiling the list." Moreover, appellant himself admitted that, to preserve the continuity of treatment, a departing dentist has an obligation to inform his patients of his new location. The trial court also found significant that appellees mailed relocation announcements only to those patients for whom they had served as primary dentist. And, from our examination of the record, it is apparent that the announcements themselves merely informed of the change of address, and did not claim that the new practice offered better prices, hours, equipment, procedures, or the like. Accordingly, the trial court found that appellees use of appellant's patient list was neither a theft nor a wrongful act.[6] We hold that those findings are not clearly erroneous.

---

5. As previously noted, appellees submitted their resignations on August 26, 1985. Dr. Stuart, however, saw scheduled patients through August 30, 1985. He said that announcements were not mailed until August 28 so that they would be received after appellees' association with appellant had terminated.

6. In support of his theory of breach, appellant relies on authority from jurisdictions outside of Maryland. We think the cases relied upon by appellant are factually inapposite. In *Dampf, P.C. v. Bloom,* 122 A.D.2d 185, 504 N.Y.S.2d 721 (1986), a dentist solicited patients for whom the plaintiff served as primary dentist. In the case *sub judice,* as we have said, it is not disputed that appellees confined their mailings to patients for whom they had served as primary dentist. Moreover, in *Dampf,* it was determined that the plaintiff had maintained a *confidential* patient list. In *Saliterman v. Finney,* 361 N.W.2d 175 (Minn.App.1985), a dentist, utilizing business records, solicited the plaintiff's patients, notwithstanding a contractual agreement restricting the dentist's access to the information.

In *Salter v. Jameson,* 105 N.M. 711, 736 P.2d 989 (1987), a departing dentist was found to have breached his duty of loyalty by, in addition to compiling a patient list, inducing patients to defer needed dental work until his own practice was open and persuading staff members to leave the plaintiff. There are no such circumstances in the record before us.

Nor were appellees obligated, as appellant suggests, to disclose their preparatory acts. *C–I–E–R, Inc., supra,* 229 Md. 357, 183 A.2d 374. Further, it is clear from the record that when Dr. Stuart began gathering patient information, it was more of a protective measure [7] than looking toward competition. Prior to August 30, appellees had not hired a staff, purchased equipment, or scheduled appointments.

## B.

In the case *sub judice,* it is undisputed that there were no agreements, written or otherwise, restricting appellees' right to compete with appellant. Consequently, appellees' right to compete after termination is limited, as we have said, only by misuse of trade secrets or confidential information. *Maryland Metals, supra,* 282 Md. at 38, 382 A.2d 564. In that regard, the trial court concluded that the patient list compiled by appellees was neither a trade secret nor confidential information.

Of course, whether there is a trade secret is a conclusion of law based upon the applicable facts. *Operations Research, Inc. v. Davidson & Talbird, Inc.,* 241 Md. 550, 556, 217 A.2d 375 (1966). Although we are well aware that a customer list may constitute a trade secret, *Space Aero Products Co., supra,* 238 Md. at 105, there are several factors which must be weighed in making that determination. Those factors are:

(1) the extent to which the information is known outside of [the employer's] business; (2) the extent to which it is known by employees and others involved in [the employer's] business; (3) the extent of measures taken by [the employer] to guard the secrecy of the information; (4) the value of the information to [the employer] and to his competitors; (5) the amount of effort or money expended by [the employer] in developing the information; (6) the

---

7. Dr. Stuart was apparently concerned about appellant's negotiating a sale of the practice to a third party, and by the abrupt firing of another dentist.

ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* [238 Md.] at 110, 208 A.2d 74 (*citing* Restatement, Torts, § 757b).

From the record before us, it is clear that the names and addresses of appellant's patients were not generally known outside of the practice. It is also not likely that the patient list could have been easily acquired or duplicated by others. And, to be sure, the information was valuable to both appellant and the appellees.

On the other hand, there is no evidence in the record to indicate that an extraordinary amount of effort or money was expended by appellant to generate the patient list. In that regard, as the trial judge noted, the information was developed as an incident of the practice. It is also apparent from the record that the patient information was readily available to, and in fact used by, others involved in appellant's practice.

The element of secrecy is, however, essential. *Operations Research, supra,* 241 Md. at 558, 217 A.2d 375. There was evidence before the trial judge that access to patient information was totally unrestricted. There was also evidence before the trial judge that there were no rules, regulations, or known procedures which restricted the availability of the patient information only to select persons. The trial court specifically found that appellant took no measures to guard the secrecy of the patient list. Moreover, as we said earlier, appellant himself acknowledged the responsibility of a departing dentist to current patients.

From the evidence we have just recounted, we hold that the trial court did not err in finding that appellant's patient list did not constitute a trade secret.

## II.

◼ Appellant also contends that the trial court erred in considering portions of the testimony of Dr. Donald N. Brotman. Dr. Brotman, who was a past president of both

the Maryland State and the Baltimore City Dental Associations, was permitted to testify, over appellant's objection, to the accepted practice within the profession of dentistry concerning a dentist's duty to his patients upon termination of employment.[8] Upon appeal appellant contends, as he did at trial, that the opinions of Dr. Brotman were based on "irrelevant considerations" and should not have been admitted. We do not agree.

It is well established in Maryland that "the determination of relevance, like other similar questions of admissibility of evidence, rests within the discretion of the trial judge," and will be disturbed on appeal only upon a showing of abuse of discretion. *Johnson v. State,* 303 Md. 487, 527, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). We hold, based upon the record before us, that the trial judge did not abuse his discretion in concluding that Dr. Brotman's opinions were relevant to the issues before him.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

---

8. The trial court also denied appellant's motion to strike the testimony of Dr. Brotman.